**Edward Drafton SLAUGHTER, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 1954.

Municipal Court of Appeals for the District of Columbia.

Argued April 29, 1957.

Decided July 30, 1957.

Harry J. Ahern, Washington, D. C., for appellant.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant was convicted by a jury of willfully causing, encouraging, and contributing to the delinquency of a minor fe-

male. The pertinent portions of the statute involved are as follows:

"* * * Any person who by act or omission willfully causes, encourages, or contributes to any condition which would bring a child within the provisions of this chapter, or who by such act or omission tends to cause such a condition, shall be guilty of a misdemeanor * * *." Code 1951, § 11–919, Act of June 1, 1938, 52 Stat. 601, ch. 309, § 18.

"(a) This chapter shall apply to any person under the age of 18 years—

\*  \*  \*  \*  \*  \*

"(2) Who is habitually beyond the control of his parent, custodian, or guardian; or

"(3) Who is habitually truant from school or home; or

"(4) Who habitually so deports himself as to injure or endanger himself or the morals or safety of himself or others; or

\*  \*  \*  \*  \*  \*

"(8) Who associates with vagrants, vicious, or immoral persons; * * *." Code 1951, § 11–906, Act of June 1, 1938, 52 Stat. 596, ch. 309, § 5.

The two Code sections are to be read together; they are both parts of the same *chapter* of the *original statute,* so that anyone who "willfully causes, encourages, or contributes" (11–919) to the conduct or way of life of a person under the age of 18 years, as described in 11–906, commits a violation of the statute.

Appellant's contentions are that the court should have granted his motion for judgment of acquittal at the close of the Government's case because it (1) failed to prove that appellant willfully contributed to the delinquency of the complainant and (2) there was no documentary evidence to substantiate the Government's claim that the complainant was in fact under the age of 18.

■ Answering his contentions in inverse order, we hold that while age is frequently proven by documentary evidence, there is no rule of law that requires evidence of that type. It is practically a universal rule that a witness is competent to testify as to his own age and date of birth.[1] Such procedure was followed here.

■ The complainant testified she was 14 and gave the date of her birth. The fact that on other occasions she represented herself as being over 18 simply goes to her credibility. The jury had the opportunity of observing her; it had the right to draw its own inference as to her age. It apparently decided she was telling the truth. We said in Cunningham v. United States:[2]

"* * * We therefore apply the rule which has been followed in Federal as well as state courts that when the age of a person becomes an issue and the person is present in court, the trier of the facts may use his senses and draw an inference as to the age of such person by personal observation. [Citing authorities.] A contrary rule would be 'pedantically overcautious.' 2 Wigmore, Evidence, Sec. 222 (3d Ed. 1940)."

■ We come to appellant's other contention that the court should have granted his motion for judgment of acquittal made at the end of the Government's case because there was not sufficient evidence to warrant the jury in finding that appellant had willfully contributed to the delinquency of the complainant. When the motion was denied, the appellant neither took the stand nor offered any evidence.

---

1. See Annotation, 39 A.L.R. 376; 1 Wharton, Criminal Evidence, § 264 (12th Ed. 1955). See also Moy Jik v. United States, 47 App.D.C. 498.

2. D.C.Mun.App., 86 A.2d 918, 919.

The Government's evidence portrayed the following lurid situation. The minor came to this city from an adjoining state and stayed with two different girl friends for about a month, when she met the appellant. After she had a few dates with him, they engaged in sexual relations. She then went to live with him, at one address for about a week, then to the residence at which they were found by the police, after they had been living there continuously as man and wife for several months. Appellant stated to the police that he did not live at the address where he was arrested in bed with the complainant, but that he lived with his mother and "he kept [that] address for the purpose of taking women that he picked up." Officers testified that at police headquarters complainant, in the presence of appellant, told of their meeting and their living together as man and wife at the residence where they were found. He admitted the truth of her statements and said he had nothing to add. While the minor testified she had told appellant she was 21 and had shown him a "birth certificate", the police officers testified that appellant stated to them that the minor had told him "she was either 20 or 21," and had shown him a piece of paper at one time that was supposed to have been a "birth certificate"; that he had not read the paper but "she just had it in her hand"; that the girl, in the presence of the appellant, stated "that at one time she waved this piece of paper [the birth certificate], *which was a blank piece of paper, had no writing on it,* told him it was a birth certificate showing she was 21." (Emphasis supplied.) Appellant made no reply to this statement.

■ After the general charge to the jury, counsel for appellant requested the court "to instruct on the legal definition of the word 'willful.'" The court advised him

it would define the term to the jury as "'More than voluntary, and implies an evil mind or intent.'" Counsel agreed: "Yes, that's a good definition. The Supreme Court said the same thing." The court then told the jury: "This action is brought under a criminal statute and you are instructed that in criminal law the term 'willfully' generally means 'More than voluntarily, and implies an evil mind or intent.'" Counsel noted no objection, and we find no error in the charge, which was consistent with the rationale of United States v. Murdock.[3]

In a very early case the Supreme Court said:

"* * * In construing a statute, penal as well as others, we must look to the object in view, and never adopt an interpretation that will defeat its own purpose, if it will admit of any other reasonable construction." [4]

■ The purpose of these statutes is to protect, as far as possible, the morals of minors. The Juvenile Court is very properly given broad power to deal with children who come within the purview of these provisions (11–906) by taking steps "to secure for each child under its jurisdiction such care and guidance, preferably in his own home, as will serve the child's welfare and the best interests of the state; * * *." (11–902) It goes further, and in line with its announced purpose of safeguarding the child provides criminal penalties for adults who encourage or contribute to the misconduct of the child. (11–919)

Bearing in mind the legal principles enunciated, we find that appellant deliberately carried on an illicit and immoral relationship with a minor female. His conduct was truly calculated to corrupt and debauch her. He directly encouraged and contributed to conduct by her that the statute was

3. 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. See also Dennis v. United States, 84 U.S. App.D.C. 31, 171 F.2d 986, affirmed on different ground 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; Townsend v. United States, 68 App.D.C. 223, 95 F.2d 352, certiorari denied 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121.

4. The Emily and The Caroline, 1824, 9 Wheat. 381, 385, 6 L.Ed. 116, 117.

expressly enacted to guard against. There can be no question but that he intended to live with the girl in violation of the law. His conduct was inherently wrong. He undoubtedly had a question as to the girl's age. He made no effort to ascertain her true age, possibly being fearful that a true inquiry would develop that she was a minor. He was willing to take the chance of evading the statute by accepting her statement as to age, supported only by a supposed "birth certificate" that consisted of a blank piece of paper that she waved in front of his face. The jury was certainly justified in finding that he had serious doubts as to the girl's age, sufficient to put anyone on inquiry, and that he willfully and intentionally intended to live with her immorally, irrespective of her real age.

Affirmed.