**In the Matter of M. C. F.**

**No. 6062.**

District of Columbia Court of Appeals.

Argued March 6, 1972.

Decided Aug. 10, 1972.

Lois R. Goodman, Georgetown Legal Internship Program, Washington, D. C., appointed by this court, for appellant.

Richard W. Barton, Assistant Corporation Counsel, with whom C. Francis Murphy, Corporation Counsel, was on the brief, for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

KELLY, Associate Judge:

Appellant, a juvenile, was arrested and charged with petit larceny following an incident of alleged shoplifting in a local department store. At a delinquency hearing two store detectives testified for the government that on May 8, 1971, they had observed appellant, along with his brother and a young female companion, shopping in a peculiar manner in the second floor Sports Department.[1] Their suspicions were further aroused when a detective from a neighboring store told them that he thought the three had taken some merchandise from his store. As the detectives watched, they saw the young lady remove a blouse from a rack in the Sports Department and hang it on a wall rack in the adjacent Daytime Dress Department. After a few minutes she took the blouse from its hanger and dropped it into one of two shopping bags located beside appellant and his brother. Appellant then picked up the bag containing the blouse and the three headed toward a down elevator, making no attempt to pay for the blouse. They were apprehended in the elevator. In addition to the blouse, the shopping bags contained other apparently unpaid-for items from nearby stores.[2]

As a preliminary matter counsel for appellant made a motion to close the case without a finding for social reasons. Counsel argued that appellant had never been arrested before; that he had a stable family life with concerned, loving parents, and that

he was an honor roll student and president of his high school class. The trial judge denied this motion on the ground that he had no power to grant such a motion. Following a factfinding hearing, appellant was adjudged a delinquent and placed on unsupervised probation for one year.

■ It is contended that the trial court erred in holding it had no power to close the case without a finding for social reasons. We agree, and remand.[3]

Superior Court Juvenile Rule 48(b) provides:

. . . Even though the Division may have acquired jurisdiction, it may at any time during or at the conclusion of any hearing dismiss a petition and terminate the proceedings relating to the child, if such action is in the interests of justice and the welfare of the child. The reasons for such dismissal shall be set forth upon request of the Corporation Counsel. Once a factfinding hearing has begun, any dismissal is with prejudice to any further proceedings on the subject. . .

Since the language of Rule 48(b) empowers a judge to dismiss a case at any time during a hearing in the interests of justice or the welfare of the child, even over the objection of the Corporation Counsel, the government questions the validity of that rule within the applicable statutory framework.[4]

1. "They just was sort of looking around as if they were shopping as if that they wanted to see if anybody was noticing the way that they were shopping. They just drew my attention by the way that they were shopping . . . ." Tr. at 6.

2. Charges against appellant's brother, an adult, were dropped by the United States Attorney's Office. No charges were filed against the young lady and, on advice of counsel, she refused to testify because of the possibility of self-incrimination.

3. We find appellant's other allegations of error without merit.

4. The disputed section of Rule 48(b) is very similar to Rule 28 of the Model Rules for Juvenile Courts. A comment following that rule explains:

At any point in the juvenile court process, it may become apparent to the court that further proceedings are unnecessary or would be harmful and that the petition should be dismissed. For example, even at a detention hearing facts may be adduced that demonstrate the child's noninvolvement in the acts alleged, and frequently at the adjudicatory hearing the acts alleged will prove to be trivial, not calling for a social study and further court action. This rule allows the termination of proceed-

Prior to the passage of the District of Columbia Court Reform and Criminal Procedure Act of 1970 (Pub.L. No. 91–358, 84 Stat. 473), which made extensive changes in the law relating to juveniles, the United States Court of Appeals for the District of Columbia Circuit had held that it was within the judicial prerogative of a juvenile court judge to conduct an informal hearing in chambers, without the prosecutor being present and, on the basis of exculpatory information disclosed there, to dismiss a petition against a juvenile.[5] The court reasoned that "the child can be accorded additional rights and privileges beyond those to which the adult defendant is entitled, and judicial conduct which might unfairly disadvantage the District in the prosecution of an adult is not necessarily unfair where the accused is a juvenile and the objective is not to punish but to protect the child."[6] The government argues that this holding was legislatively overruled by Congress when it enacted the new juvenile code. Specifically, the government points out that prior to 1970 judges were authorized to conduct juvenile hearings in an informal manner,[7] whereas greater formality must now be observed,[8] and the participation of the Corporation Counsel in juvenile proceedings was merely permissive,[9] while now it is mandatory.[10] Additionally, it argues that the creation of a new procedure called a consent decree has eliminated both the need and the possibility of such judicial dismissals of petitions against juveniles.

D.C.Code 1967, § 16–2314 (Supp. V, 1972) provides:

(a) At any time after the filing of a delinquency or need of supervision petition and prior to adjudication at a fact-finding hearing, the Division may, on motion of the Corporation Counsel or counsel for the child, suspend the proceedings and continue the child under supervision, without commitment, under terms and conditions established by rules of the Superior Court. Such a consent decree shall not be entered . . . over the objection of the child or of the Corporation Counsel.[11]

It is the government's position that, since a consent decree cannot be entered over the objection of the Corporation Counsel, a rule enabling a judge to dismiss a petition for social reasons over the prosecutor's objection must be invalid. The government points to a statement by Donald E. Santarelli, Associate Deputy Attorney

---

ings in such cases, and permits the court to dismiss a petition even when the court may technically have jurisdiction, thus preventing the child from unnecessarily acquiring a record of adjudication. Council of Judges, National Council on Crime and Delinquency, Model Rules for Juvenile Courts, p. 67 (Proposed Final Draft, May–1968).

5. Rice v. District of Columbia, 128 U.S. App.D.C. 194, 385 F.2d 976 (1967).

6. Id. at 197, 385 F.2d at 979.

7. D.C.Code 1961, § 11–915 and D.C.Code 1967, § 16–2307 specifically provided that juvenile hearings could be held in an informal manner.

8. In the new code, the phrase "informal manner" has been deleted. § 16–2316(c) (Supp. V, 1972), requires that all juvenile hearings and proceedings must be recorded.

9. D.C.Code 1967, § 11–1583(a) provided that the Corporation Counsel could assist the Juvenile Court in hearings "upon request".

10. Under the new code, the District of Columbia, through the Corporation Counsel, is a "party to all proceedings", § 16–2305(f) (Supp. V, 1972), and must "present evidence in support of all petitions" filed, § 16–2316(a) (Supp. V, 1972). Additionally, the Corporation Counsel makes the final decision on whether or not to file a petition alleging delinquency, § 16–2305(c) (Supp. V, 1972).

11. It appears that prior to the factfinding hearing in this case the parties had agreed to the entry of a consent decree but on the day of the hearing the juvenile changed his mind.

General, which was presented to the Senate Committee on the District of Columbia while this section was being considered. He said:

> Proposed section [16–2314] would create a consent decree procedure in juvenile cases whereby the court could order, prior to adjudication, that the proceedings be suspended under certain conditions. Although many jurisdictions have this type of decree, it has not existed in the District of Columbia. Instead, informal procedures have been devised here to accomplish the same end. However, what we have provided for in proposed section [16–2314] would insure the protection of the child's rights. The consent decree procedure would be authorized only upon a court order where the child was represented by counsel and only for a limited period of time—6 months. The child would, in contrast to the present informal practice, have the best of both worlds since by his own good behavior he could bring about the dismissal of the petition which had been filed against him, or if he failed to behave, he would still be in a position to challenge the allegation of the petition without previously having surrendered or waived any of his rights.[12]

We do not find these arguments dispositive, however. We note that under the new law there are two essential elements in a finding of delinquency. A petition in a delinquency case must state not only the statute or ordinance on which the charge is based, but also a statement "that the child appears to be in need of care or rehabilitation." D.C.Code 1967, § 16–2305(d) (Supp. V, 1972). Delinquency adjudication consists of two steps: First, a factfinding hearing must be held to determine whether the allegations of the petition are true, and then, if the determination is made, a dispositional hearing is necessary to decide whether the child is in need of care or rehabilitation and, if so, what disposition should be made. While there is a statutory presumption that the commission of a crime shows the need for care or rehabilitation, where this presumption is successfully rebutted the juvenile must be discharged. D.C.Code 1967, § 16–2317 (Supp. V, 1972).

Although greater formality in delinquency hearings, such as the presence of a reporter and assistance of counsel, is now required, the basic philosophy of the juvenile system remains unchanged. It is not a criminal system.[13] More stress is placed on the welfare and rehabilitation of the individual child than on the technical questions of factual guilt or innocence. Where it becomes clear to a judge during a factfinding hearing that the continuation of such a proceeding is not in the best interests of either justice or the individual child, it should be within his power to terminate the proceedings. The fact that the Corporation Counsel must participate in all juvenile cases does not change this result, for a motion to close a case without a finding is made in open court, and the government can certainly present its reasons for objecting thereto. Neither, we think, does the availability of a consent decree take the place of a judicial dismissal. A consent decree serves only to temporarily suspend proceedings against a juvenile. A juvenile does not obtain an immediate dismissal of the actions against him. Rather, at the end of the six-month period, the petition is either dismissed or revived, depending on the juvenile's conduct during that time. While we do not question the usefulness of such a procedure, we feel that it should not be construed to limit the exercise of judicial discretion in dismissing a juvenile petition where such a dismissal appears appropriate.

In the instant case, the trial judge denied appellant's motion because he believed that he lacked the power to grant it. How-

---

12. Hearings on S. 2981 Before the Comm. on the District of Columbia, 91st Cong., 1st Sess., pt. 7, at 1803 (1969).

13. *See* McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

ever, since we hold that the question of whether such dismissal is proper in a given case is a matter within the discretion of the trial judge, we remand the case to afford the trial judge an opportunity to exercise this discretion.

So ordered.